# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

EMILIANO HERRERA-VELAZQUEZ, )
et al, )
)
    Plaintiffs, )
)
v. )
)
PLANTATION SWEETS, INC. )    Case No. CV614-127
VIDALIA PLANTATION, INC. )
RONALD A. COLLINS, )
NARCISO PEREZ, and )
PEREZ FORESTRY, LLC, )
)
    Defendants. )

## ORDER

Farmworkers brought this class action asserting under-compensation claims. Doc. 8; *see also Ojeda-Sanchez v. Bland*, 2009 WL 3851623 at * 1 (S.D. Ga. Nov. 17, 2009); *Ramos-Barrientos v. Bland*, 2009 WL 3851624 at * 1 (S.D. Ga. Nov. 17, 2009). They "are guest workers from Mexico and seasonal agricultural workers from the United States recruited by Defendants, to work in and around Tattnall County, Georgia between 2012 and 2014." Doc. 8 at 1. Plaintiffs seek to "vindicate their rights under the Fair Labor Standards Act ('FLSA')"

and other laws. *Id.*[1] To include unidentified class members they have resorted to discovery but say they have hit a snag. They thus move to compel defendants Perez and Perez Forestry, LLC (hereafter and for convenience only, "Perez") "to produce a *complete* list of putative class member names and addresses, as ordered by this Court." Doc. 44 at 1 (emphasis added). Meanwhile, a third party seeks a compliance ruling with respect to plaintiffs' document subpoena, doc. 47, while plaintiffs move to seal some matters related to that. Doc. 52. Those motions are addressed below.

---

[1] They allege personal jurisdiction, too.

> Defendants Narciso Perez ("Perez") and Perez Forestry, LLC ("Perez Forestry") established minimum contacts in Georgia, satisfying due process concerns, by utilizing a Georgia agent to recruit agricultural labor through the H-2B program, supervising agricultural labor in Georgia, and transporting agricultural labor into, out of, and then back into Georgia, coordinating labor practices based on the needs of co-Defendants' Georgia agribusiness.

Doc. 8 at 3 ¶ 8. "Plaintiffs Herrera-Velazquez, Resendiz-Alvarez, Velazquez-Camacho, and Martinez-Zavala alleged that they, and other similarly situated workers, suffered various FLSA violations, both in Georgia, and notably, overtime violations for tree planting work outside of Georgia." Doc. 44 at 2.

2

A. **Motion to Compel**

The motion to compel arises from Perez's response to court-ordered production of information that plaintiffs say they need to prove their claims. His response, they contend, is deficient. To better understand this dispute, it is worth pausing to review the class action process being applied in this case:

> A two-step procedure exists for determining whether to certify a class under the FLSA. The initial step is known as conditional certification. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). During this stage, the court has the authority to decide "based only on the pleadings and any affidavits which have been submitted -- whether notice of the action should be given to potential class members." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)).

*Pares v. Kendall Lakes Automotive, LLC*, 2013 WL 3279803 at * 3 (S.D. Fla. June 27, 2). After the plaintiffs meet that burden and thus win conditional certification, they may conduct discovery to shore up their class. They are, after all, subject to a heavier burden in factually demonstrating the existence of similarly situated employees, *id.* at * 4, and they are also subject to downwind decertification motions. *Rojas v.*

3

*Garda CL Se., Inc.*, 2015 WL 5084135 at * 6 (S.D. Fla. Aug. 28, 2015) (granting a decertification motion).

Here the plaintiffs made it through stage one. This Court's class-certification Order conditionally certified as class members:

> All farmworkers employed by Plantation Sweets, including those employed under the supervision of Narciso Perez, to plant, cultivate, and harvest agricultural products between November 2012 and December 2014," and "All farmworkers so employed by the Defendants who were also taken out of Georgia to plant trees and produce between November 2012 and December 2014[.]

Doc. 42 at 5; *see also* doc. 44 at 1.[2] The Court thus ordered "the Defendants [to] provide the Plaintiffs with a list of names, last known permanent addresses, and social security numbers of all putative class members within fourteen (14) days of this Order[.]" Doc. 42 at 5-6 (Order entered July 6, 2015, so July 20, 2015 was the deadline).

Plaintiffs complain that defendants "produced only the names and the temporary (not permanent) addresses of workers who worked

---

[2] In support of plaintiffs' motion for that Order, "Lead Plaintiff Herrera-Velazquez filed a sworn declaration estimating that 'more or less 40' men were recruited by Defendant Perez to work in the United States, and that only when they received their visas "Narciso [Perez] told us for the first time that we were going to the state of Georgia, not Arkansas, [as he evidently promised]." Doc. 9-2 ¶¶ 7, 11; doc. 44 at 3. Perez brought them to Georgia to harvest onions. Doc. 44 at 3.

4

under the terms of a *2013* Perez Forestry H-2A job order. This did not come as a surprise to Plaintiffs. After Defendants Perez and Perez Forestry failed to meet the Court's . . . deadline, Plaintiffs' counsel contacted counsel for Defendants Perez and Perez Forestry about the name and address production." Doc. 44 at 4 (emphasis added).

Defense counsel promised production of *currently* available information only "from 2013" because "'[n]either Perez nor Perez Forestry did any work in Georgia prior to [2013].' Ex. A-2 (email from L. Wheaton to T. Roethke, July 21, 2015 12:05 PM)." Doc. 44 at 4. Attorney Wheaton did write, however, "that she was 'going by the judge's definition of the class, which by its terms includes workers for Perez or Perez Forestry who worked in Georgia and any other state,'" and that Perez would produce "'data on the only group of workers that fit that definition.'" Doc. 44 at 5 (quoting Wheaton's email). Hence, plaintiffs conclude, Perez promised only 2013 data. *Id.*

Perez's motion-to-compel response brief confirms this:

Defendant Narciso Perez, who is domiciled in Arkansas, first arrived in Georgia and began to work for Ronny Collins and

5

> Plantation Sweets in April 2013. Aff. of Narciso Perez attached as Ex. A. Because he did not arrive until the beginning of the onion harvest season, he did not recruit or pay a crew of his own. *Id.* Rather, he helped to supervise a crew of about thirty (30) workers that was recruited and paid by another supervisor named Arisol Lopez or Arisol Caballo. Perez has no employment records of these workers because he did not have any employment responsibilities to them.

Doc. 46 at 2; *see also* doc. 46-1 at 2 ¶ 3 ("I first began working for Ronny Collins and Plantation Sweets in April 2013. I have never worked in Georgia prior to then. . . . I do not have any documents or records with any information as to the workers with whom I worked in April 2013.").

The remainder of Perez's brief recounts his 2013 activities. *Id.* It expressly carves out 2014 because Perez "did not have any employment responsibilities to anyone who worked in 2014," *id.*, and insists that for the workers covered by the Court's order, "Perez only has information for those who worked in the Fall of 2013 because those were the only workers he helped recruit and paid." Doc. 46 at 2-3. Perez says that through Perez Forestry he recruits H-2B workers to work in other states but they did no work in Georgia, so they do not meet the Court's definition. *Id.* at 3; *see also* doc. 46-1 at 4 ¶ 11. He

6

expressly denies involving any workers in Georgia "[a]fter the onion harvest in 2013," doc. 46-1 at 2 ¶ 4, and insists that after the workers he employed "left my employment in March, 2014," he never took any more workers to Georgia. *Id.*

Finally, Perez represents that "[t]he documents that [he] has turned over contain all of the information he has regarding the workers he recruited and supervised in the Fall of 2013. Perez did not recruit or pay any other workers for on behalf of Plantation Sweets." Doc. 46 at 4. He thus contends that he has complied with the Court's Order, so plaintiffs' motion to compel should be denied. *Id.* at 4. In essence, then, he is providing no information outside of the year 2013.

Perez's factual representations to his Court, insist plaintiffs, are "demonstrably false." Doc. 50 at 1. In fact:

> Defendant Perez did work for Defendant Collins in December of 2012, as demonstrated by the attached Exhibit A, a check for "contract labor" from Defendant Plantation Sweets to Defendant Perez dated December 21, 2012 in the amount of $10,599.73.2 Moreover, Defendant Perez's personal bank records show him executing check card transactions in Metter, GA, Vidalia, GA, and Cobbtown, GA (where co-Defendants' farm is located) in December 2012. Ex. B. Defendant Perez's claims to the contrary need not be cross-examined -- they are just false. Also false are Defendant Perez's claims that, in April 2013, he

7

was not responsible for recruiting or paying any workers, Doc. 46-1 at 2. *See* Ex C (April 19, 2013 check for "contract labor" from Defendant Plantation Sweets to Defendant Perez in the amount of $19,686.16). Lastly, Defendant Perez claims that his tree planting and thinning work would end in March [2014], Doc. 46-1 at 2, but fails to explain why his H-2B job orders each year ended on July 31, *e.g.*, Doc. 8-1 at 5. The obvious answer is that Defendants used the H-2B workers for agricultural work in Georgia during the extra months.

Doc. 50 at 2. Too, plaintiffs point out, lead plaintiff Herrera-Velazquez has attested that he worked in Georgia in 2012. *Id.* And defendants' claims to the contrary are contradicted by the record. *Id.* at 2-3. Plaintiffs thus want any applicable limitations clock stopped[3] (from July 20, 2015 onward) plus attorney fees and costs. *Id.* at 3-7.

Responding to plaintiffs' false-representation claim, Perez says he is

> in receipt of the exhibits set forth in plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Compel and do[es] not have any independent recollection of the context or circumstances surrounding the check and bank records produced by plaintiffs. Likewise, plaintiffs have not offered any context of those records and nothing has been stated on the record by the other defendants in this lawsuit. Perez expects that the evidence will eventually show that all of the H2B workers employed by

---

[3] "Under the FLSA, the two-year statute of limitations is extended to three years if a cause of action arises out of a willful violation of the FLSA. 29 U.S.C. § 255(a)." *Ojeda-Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 902 (11th Cir. 2012).

8

> [him, through Perez] Forestry never worked in Georgia and are thus not part of the putative class.

Doc. 53 at 1. These rebuttal assertions are *unsworn,* nor otherwise submitted under 28 U.S.C. § 1746 (permitting written, unsworn declaration subscribed in proper form as true under penalty of perjury to substitute for an affidavit). Perez does further reply (again, only through counsel):

> Nonetheless, in the interests of good faith, Perez has produced most of the records in his possession that contain any information regarding the names, social security numbers, and addresses of putative class members. Several of the records in Perez's possession were located at his office and home in Arkansas, to which Perez has only recently returned. Perez's counsel expects that the records that remain to be produced will be received and turned over to plaintiffs this week. Plaintiffs' counsel and Perez's counsel have already come to a tolling agreement due to Perez's delay in turning the information over to plaintiffs.

*Id.* at 2.

Despite these concessions, the motion to compel has not been withdrawn, and thus not resolved (plaintiffs want fees and costs, doc. 44 at 9 ¶ 3; doc. 50 at 3-5).[4]  More importantly, lying under

---

[4] If a motion to compel discovery is granted or the discovery is provided after the motion is filed, the Court must require the party whose conduct necessitated the

oath, either live or "on paper," is a criminally prosecutable offense.[5] Plaintiffs have more or less accused Perez of lying about the facts. He has tendered no sworn affidavit or § 1746 statement in rebuttal.

The Court will *not* accept unsworn statements in briefs, which is all it has thus far received in response to plaintiffs' accusation. Within 14 days of the date this Order is served, then, Perez shall submit an affidavit swearing under oath to the above "independent recollection" assertions. He shall also specifically address each and every factual assertion set forth in plaintiffs'

---

motion to pay the movant's reasonable expenses -- unless the movant filed the motion before attempting in good faith to obtain the disclosure, the opposing party's nondisclosure was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). *See Eli Research, LLC v. Must Have Info Inc.*, 2015 WL 5008859 at * 1 (M.D. Fla. Aug. 20, 2015) (denying sanctions because defendant filed its motion to compel prematurely). "If a motion is granted in part and denied in part, the court may make a reasonable apportionment of expenses for the motion. Fed.R.Civ.P. 37(a)(5)(C)." *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, 2015 WL 1470971 at * 11 (M.D. Fla. Mar. 31, 2015).

[5] *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002) (defendant's false subscription to statement in his habeas petition that he had not previously filed a § 2255 motion was "material" for purposes of perjury prosecution; statement fooled the clerk of the court into accepting the "writ" for filing, and led the magistrate judge to consider its merits until she discovered that the "writ" was a successive § 2255 motion in disguise); *United States v. Dickerson*, CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), cited in *Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009); *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012).

10

brief, doc. 50 at 2-3.  Alternatively, he may promptly resolve this matter, and that shall be manifested by plaintiffs' withdrawal of their compel motion.  For the moment, then, plaintiffs' motion to compel (doc. 44) is **DEFERRED** pending further briefing.

### B. Motion For Protective Order

In quest of documentation about the business dealings between Perez and the Plum Creek Timber Company, Inc., plaintiffs served Plum Creek with a Fed. R. Civ. P. 45 document subpoena.  Doc. 47-1 at 7-8 (seeking, *inter alia*, "Contracts for the planting of trees or other forestry work to be performed by [Perez] and/or workers under [his control. . . .]"; invoices, billing, scope-of-work documentation; correspondence).  Plum Creek moves for a protective order.  Doc. 47.  It insists that it in good faith has complied but omitted pricing data, and it wants this Court's blessing on that score.  *Id.* at 4.  That data, it contends, is both proprietary and not relevant given plaintiffs' stated purpose -- "to show the amount and type of work contracted for with . . . [Perez] and when such work was performed." *Id.* at 3.

Courts can quash or limit (*e.g.*, via protective order) a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). But "'there is no absolute privilege for trade secrets and similar confidential information.'" *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner, & Smith Inc.*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006) (quoting *Fed Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979)). Instead, "courts weigh the claim to privacy against the need for disclosure, and commonly enter a protective order restricting disclosure." *Festus & Helen*, 432 F. Supp. 2d at 1380. Such an order may require that "a trade secret or other confidential . . . commercial information . . . be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

Plaintiffs say the amount Plum Creek paid to Perez for the tree-planting labor Perez supplied is relevant to their claims in this case. Doc. 51 at 1; *see also id.* at 2 (if Plum Creek didn't pay Perez enough to cover Perez's labor costs, this would show that Perez

12

intended to use those workers for other work, specifically in Georgia, "which Perez continues to insist did not occur."); *see also id.* at 8. They otherwise oppose Plum Creek's motion because it is untimely and filed in violation of Plum Creek's good faith duty to confer.[6] *Id.* Also, the pricing sensitivity can be addressed by the previously entered confidentiality order. *Id.*; *see also* doc. 45.

Plaintiffs are correct. Plum Creek is untimely in objecting (it took more than the 14 days that Rule 45(d)(2)(B) allows to object) and failed to meaningfully confer with the plaintiffs (they say -- and Plum Creek does not dispute this -- that they first they heard of its pricing data sensitivity only when they received its protective-order motion, doc. 51 at 2-4). Nor does Plum Creek rebut plaintiffs'

---

[6] *See* Local Rule 26.5 ("Counsel are reminded that Fed. R. Civ. P. 26(c) and 37(a)(2) require a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court."); *Hernandez v. Hendrix Produce, Inc.*, 297 F.R.D. 538, 2014 WL 92459 at * 2 (S.D.Ga. Jan. 9, 2014); *State Farm Mut. Auto. Ins. Co. v. Howard*, 296 F.R.D. 692, 2013 WL 6834364 at * 5 n. 11 (S.D. Ga. Dec.27, 2013) (the conference must also be meaningful; more than a "we met and talked" certification is needed). This Court has applied the duty to confer requirement in the Rule 45 context. *Hernandez v. Hendrix Produce, Inc.*, 2014 WL 953503 at *1 (S.D. Ga. Mar. 10, 2014) (citing *St. Johns Ins. Co. v. Nautilus Ins. Co.*, 2008 WL 1897572 at * 1 (M.D. Fla. Apr. 28, 2008) (applying duty to confer obligation to motions to quash and to compel in a subpoena-based discovery dispute)). Plum Creek has shown no compliance here.

showing that the pricing data can be protected by the confidentiality order of record. *Id.* at 2; doc. 45. Plaintiffs' post-motion efforts toward this end (they offered to work with Plum Creek to apply the confidentiality order) illuminate Plum Creek's failure to confer and thus spare this Court's involvement in this matter. Doc. 51 at 5-6; doc. 52.

Plum Creek's motion for a protective order (doc. 47) therefore is **DENIED**. Within 14 days of the date this Order is served, it shall produce to plaintiffs the pricing data they demand, and pay $500 to plaintiffs to partially cover their costs. Fed. R. Civ. P. 37(a)(5). However, the disclosure shall be subject to the previously entered Confidentiality Order, doc. 45, and the Court **GRANTS** plaintiffs' motion to seal the draft invoices to which it refers (doc. 52 at 2) in support of its position here. Doc. 52 (plaintiffs represent that they obtained from another source invoices that Perez submitted to Plum Creek, and those invoices include pricing data relevant to plaintiffs' claims).

## C. CONCLUSION

Plaintiffs' motion to compel (doc. 44) is **DEFERRED** pending further briefing. Plum Creek's motion for a protective order (doc. 47) is **DENIED**. Finally, the Court **GRANTS** plaintiffs' motion to seal. Doc. 52.

**SO ORDERED**, this 23rd day of September, 2015.

```
                                    _____
                                    UNITED STATES MAGISTRATE JUDGE
                                    SOUTHERN DISTRICT OF GEORGIA
```